PAUL PROVENZANO ET AL. *v.* MARK PROVENZANO
(AC 24758)

West, McLachlan and Mihalakos, Js.

Argued October 12, 2004—officially released March 29, 2005

*Noel R. Newman,* for the appellant (defendant).

*Neil R. Marcus,* with whom, on the brief, was *Marnie J. Rubin,* for the appellees (plaintiffs).

*Opinion*

MIHALAKOS, J. The defendant, Mark Provenzano, appeals from the judgment, rendered after a trial to the court, declaring that the plaintiffs, Paul Provenzano and Dorothy Provenzano, had gained title to a portion of his property through adverse possession. The defendant contends that the court improperly (1) found that the plaintiffs had acquired title to a portion of his land through adverse possession and (2) awarded the plaintiffs a larger portion of his property than had been

requested in the pleadings. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. The parties are the owners of adjoining parcels of land on Broadway in Trumbull. The plaintiffs are the record owners of the parcel at 147 Broadway (lot C). On July 6, 1959, the plaintiffs acquired title to lot C by deed from Anna Provenzano. The deed indicated a frontage of 125 feet. Sometime before 1967, after acquiring the property, the plaintiffs discovered a mistake in the deed. Lot C had a frontage of only 112.5 feet. The plaintiffs offered to purchase a piece of property with 12.5 feet of frontage from Anthony Varisco, who then was the owner of 167 Broadway (lot A), in order to correct the deed. Varisco declined the plaintiffs' offer.

In or about 1960, shortly after purchasing the property, the plaintiffs constructed a house that was centered on the property. The plaintiffs then asked their father[1] about the location of the property line between lot C and lot A. Relying on their father's representations, the plaintiffs built a split rail fence along the line he had indicated. In 1977, the plaintiffs constructed a patio, built a retaining wall and planted shrubbery in the area south of the fence line. The area south of the fence line was used exclusively by the plaintiffs until 2001.

The defendant is the record owner of lot A, which adjoins the northern boundary of lot C. On February 14, 2000, he acquired title to lot A by deed from his father, Hugo Provenzano. Beginning in 1991, prior to acquiring title to the property, the defendant had lived at 167 Broadway as a tenant. Hugo Provenzano never, himself, lived on the property, but had acquired title to lot A in 1967. Shortly thereafter, in 1972, Hugo

---

[1] Paul Provenzano asked his father about the location of a fence. Paul Provenzano and Dorothy Provenzano are married.

Provenzano conveyed a small, triangular twelve and one-half foot portion of land to the plaintiffs. The plaintiffs were able to correct the defect in the deed to lot C after their previous attempts to purchase the land from Varisco had failed.

In the spring of 1989, the plaintiffs asked Hugo Provenzano if he was interested in selling lot A. Hugo Provenzano declined the plaintiffs' offer to purchase the lot. Shortly after the plaintiffs' inquiry, the defendant and a friend took a transit and attempted to define the property line between lot C and lot A. He testified that he determined that the plaintiffs' patio was encroaching thirteen feet on lot A. Although the defendant, at the time, was neither a tenant nor an owner of the property, he positioned a rope, unbeknownst to the plaintiffs, approximately one foot off the ground, across the patio, to demonstrate the correct property line and to show that the plaintiffs' patio was protruding onto lot A. Hugo Provenzano ordered the defendant to remove the rope.

In 1996, after planning to build an addition to their home, the plaintiffs had their property surveyed and learned that their patio encroached on lot A. The plaintiffs did not alert Hugo Provenzano to this mistake until 1998, when they asked him to convey the land to them. Hugo Provenzano declined.

In November, 2001, the defendant had the property surveyed and determined that the patio did, in fact, encroach on lot A. In response, the defendant placed a 100 foot chain-link fence running from the street to the patio. In addition, he removed the shrubs, bushes and concrete wall that the plaintiffs had installed. The defendant also poured mulch onto the patio so that the plaintiffs could not use it.

By complaint, dated April 2, 2002, the plaintiffs commenced this action to quiet title on the basis of a claim of adverse possession. The complaint referred to the

disputed property as a rectangular parcel, approximately 100 by 20 feet in dimension, across the southern boundary of lot A. The plaintiffs added a count of trespass, claiming that because they owned the property through adverse possession, the defendant had entered the property unlawfully and damaged the plaintiffs' property. The complaint was later amended on May 29, 2003, repeating, however, the same initial claims.

After a trial to the court, the court rendered judgment in favor of the plaintiffs on both counts, but did not award damages on the claim of trespass. This appeal followed. Additional facts will be provided as necessary.

## I

The defendant's first claim is that the court improperly determined that the plaintiffs had acquired title to the parcel in question by adverse possession. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner." (Internal quotation marks omitted.) *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 622, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001).

"A finding of adverse possession is to be made out by clear and positive proof. . . . [C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do

not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite that exacting standard, our scope of review is limited. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Internal quotation marks omitted.) *Allen* v. *Johnson*, 79 Conn. App. 740, 745, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003). With that standard in mind, we address the defendant's claims.

The defendant argues that the court improperly determined that the plaintiffs had fulfilled the claim of right requirement[2] for adverse possession because (1) the owner gave them permission to use the land and (2) the plaintiffs asked to purchase the property, thereby acknowledging the superior title of the defendant's predecessor. We disagree.

The defendants' claim requires us to review a finding of fact. "Factual findings . . . are reviewed under the clearly erroneous standard of review. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 31–32, 830 A.2d 240 (2003).

---

[2] In their briefs, the parties have referred to the claim of right requirement as the "hostility requirement."

The court properly found that the plaintiffs satisfied the "claim of right" requirement and acquired title to the property through adverse possession. First, the court determined that this was not a situation in which the plaintiffs had been given a license to use the property. "[A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property . . . ." (Internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 845, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). Although the defendant is correct that Hugo Provenzano gave the plaintiffs permission to use some land along the southern boundary of his property to build a wall, a walkway and some sheds, the plaintiffs have not disputed that fact. The land to which the defendant refers is not at issue in this case. As to the disputed land, the defendant claims that Hugo Provenzano was aware of the plaintiffs' use of the defendant's land and assented to that use. That argument is specious. It does not matter whether the owner of the land was aware of the plaintiffs' use of his property. Moreover, there is nothing in the record to suggest that Hugo Provenzano granted the plaintiff a license to use the disputed land. We conclude, therefore, that the defendant's first claim must fail.

Second, the court properly determined that the plaintiffs satisfied the claim of right requirement despite their 1989 offer to purchase lot A and their request in 1998 that Hugo Provenzano convey the disputed parcel to them. The defendant argues that the offers to purchase or requests for conveyance were acknowledgments of Hugo Provenzano's superior title, thereby interrupting any continuous, hostile possession of the property. We conclude that this claim is also without merit.

"An adverse possessor may interrupt his or her continuous possession by acting in a way that acknowledges the superiority of the real owner's title." *Allen* v. *Johnson,* supra, 79 Conn. App. 746. "[A]n offer to purchase the legal title, or an acceptance of a conveyance of title, as distinguished from a mere outstanding claim or interest, is a recognition of that title. Although efforts to obtain deeds from other claimants to the property do not disprove the hostile character of a possession, efforts to buy the property from the record owner constitute an acknowledgement of the record owner's superior title, and thus disprove the adverse holding, because there has been no claim of right." (Internal quotation marks omitted.) Id., 746–47.

In 1989, the plaintiffs offered to purchase lot A in its entirety. There is nothing to suggest that when this offer was made, the plaintiffs intended to buy only that portion of land at issue in this case. In fact, it appears that the plaintiffs already believed they owned the parcel in question and acted in accordance with that belief. In addition, their request to Hugo Provenzano to convey the disputed parcel in 1998 did not adversely impact the plaintiffs' hostile possession of the land. Prior to this request, the plaintiffs had used the land exclusively for more than the required fifteen years. In other words, they had already acquired title by adverse possession prior to this request. In or about 1967, they built the fence and used the property south of this fence line exclusively until the current litigation. Moreover, since 1977, they utilized the parcel at issue in a manner that suggested that they owned it by building a patio. We therefore affirm the judgment of the trial court as to its finding of adverse possession.

## II

The defendant's second claim on appeal involves the court's award to the plaintiffs. Particularly, the defen-

dant contends that the court improperly awarded to the plaintiffs a larger piece of land than was requested in the pleadings. The defendant asserts that the court's judgment should have conformed to the pleadings and that the court improperly awarded relief outside the scope of the pleadings. We disagree.

"The interpretation of pleadings is an issue of law. As such, our review of the court's decisions in that regard is plenary." *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 746, 793 A.2d 1118 (2002). "The allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citations omitted; internal quotation marks omitted.) *Lundberg* v. *Kovacs*, 172 Conn. 229, 232, 374 A.2d 201 (1977). Nevertheless, "pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000). "[T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 173–74, 851 A.2d 1113 (2004).

The defendant asserts that the court awarded a larger piece of the property than was requested in the pleadings. Given that our review requires us to read the complaint in its entirety, we must look to the generalized description of the disputed parcel. Although the

complaint refers to the parcel as a piece of land 100 by 20 feet, these dimensions appear to have been approximations. A closer reading of the complaint reveals a broader description of the parcel, including landmarks such as the patio and shrubs. The court's award of a parcel encompassing these landmarks may yield an area of land with different dimensions, but the defendant has not provided us with the specific dimensions of the portion of the award in dispute. Nevertheless, we conclude that the portion of land awarded by the court was not substantially different from that requested. We need not, however, rely solely on the issue of whether the portion in dispute is larger than requested. A review of the court's decision convinces us that both parties stipulated to the dimensions of the parcel. The court, after questioning the attorneys at length, clarified that parcel shown on the plaintiffs' exhibit two as the long triangle fronting on Broadway at the northeasterly corner of the plaintiffs' property, which the parties' attorneys, through agreement, had demonstrated by marking the boundaries of it by heavy pen or pencil, was the disputed parcel. We therefore affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.